In re Larry T. **MARTIN** and Cynthia J. Martin, d/b/a A & W Drive-in Restaurant and Martin's Exxon, Debtors.

Bankruptcy No. 284–00296.

United States Bankruptcy Court,
D. Maine.

March 21, 1986.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., for debtors.

Stanley Greenberg, Greenberg & Greenberg, Portland, Me., for Creditors' Committee.

William R. Black, Portland, Me., trustee.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The critical issue presented in this proceeding involves the validity of a mortgage on the debtors' real estate in favor of a law firm. The mortgage was executed immediately prior to the filing of a chapter 11 case for the purpose of securing the payment of fees and disbursements incurred during the case. Another issue involves the allowance of fees to the law firm. The court concludes that the mortgage must be invalidated, but that the fees and disbursements may be allowed in part.

The facts are not seriously disputed. The debtors contacted the law firm of Verrill & Dana on November 27, 1984. They were suffering serious financial difficulty. An A & W Restaurant operated by them was dramatically unsuccessful. They were unable to pay creditors, and a civil action had been commenced against them in state court. They were also threatened with eviction from their business premises.

On December 3, 1984, at a conference with counsel, debtors decided upon a chapter 11 filing. At that conference the debtors were informed that a $5,000 retainer was required.

A few days later, the debtors reported that they were unable to obtain the $5,000 retainer. Bank financing was discussed and rejected. The debtors eventually agreed to grant Verrill and Dana a second mortgage on real estate situated on Summit Street in Portland, in which they enjoyed a substantial equity.[1]

On December 10, 1984, Larry T. Martin, one of the debtors, executed the mortgage now in issue to Verrill & Dana:

> to secure payment of One Hundred Thousand Dollars ($1000,000.00)____ _____, on demand, with no interest thereon, as provided in a Note of even date herewith ... and shall repay according to their terms, all debts and obligations existing prior to or created simultaneously herewith due the Grantee by the Grantor hereof, and shall repay all future advances made at the option of the Grantee ... up to and not exceeding a total amount outstanding at any one time of One Hundred Thousand and 00/100ths ($100,000.00) Dollars....

The mortgage was duly recorded in the Registry of Deeds on December 11, 1984. Immediately thereafter, on the same day, the debtors' chapter 11 petition was filed.

With their petition the debtors filed their application for authority to employ Verrill & Dana as their counsel. The application revealed the existance of the note and

---

1. The Summit Street property was not the debtors' residence. Their residence on Codman Street was encumbered nearly to its full value.

mortgage and sought approval of same. An affidavit filed on December 12, 1984 by P. Benjamin Zuckerman, Esq. of Verrill & Dana also revealed the note and mortgage.

On December 14, 1984, the court authorized employment of Verrill & Dana, but declined to approve the note and mortgage.

The debtors' attempt to reorganize eventually failed, and the case was converted to chapter 7. A trustee was appointed on May 13, 1985.

On July 17, 1985, the law firm filed an application for interim compensation which was objected to by the creditors' committee. A hearing was scheduled for August 20, 1985.

In the meantime, on August 12, 1985, the trustee filed an intention to abandon the Summit Street real estate. The trustee apparently considered the Verrill & Dana mortgage, securing fees and disbursements totalling $12,742.13, to be valid. On August 15, 1985, the creditors' committee objected to the abandonment on several grounds, including an assertion that the Verrill & Dana mortgage was invalid. A hearing was held in chambers on both objections on September 5, 1985 and a briefing schedule was established.[2]

## DISCUSSION

Section 327(a) of the Bankruptcy Code authorizes a trustee, with the court's approval, to employ one or more attorneys to represent and assist the trustee in carrying out the trustee's duties under the Code. Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 1107(a) of the Code makes section 327(a) applicable to a Chapter 11 debtor in possession.

Section 1107(a) provides:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under this chapter.

The legislative history of section 1107 informs us:

> This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes. (citation omitted).

S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6360.

█ Thus, an attorney for a Chapter 11 debtor in possession must not hold or represent an interest adverse to the estate and must be disinterested. *In re Leisure Dyanamics*, 32 B.R. 753, (Bankr.Minn. 1983); *In re Cropper Co., Inc.*, 35 B.R. 625 (Bankr.M.D.Ga.1983); *In re Anver Corp.*, 44 B.R. 615 (Bankr.Mass.1984); *In re Roberts*, 46 B.R. 815 (Bankr.Utah 1985); 2 *Collier on Bankruptcy*, 15th ed. ¶ 327.01.

Section 101(13) defines "disinterested person" as a person that ...

> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, con-

---

**2.** No party has questioned the standing of the creditors' committee to object to Verrill & Dana's fees or the trustee's proposed abandonment. The parties probably realize that the court must address these issues regardless of objections, or lack thereof. *In re Anver Corp.*, *infra*, at 617.

nection with, or interest in, the debtor ..., or for any other reason.

The definition of "disinterested person" is adopted from Chapter X section 158 of the old Act "though it is expanded and modified in some respects." H.R.Rep. 595, 95th Cong., 1st Sess. 310 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6267. Subsection 101(13)(E) is adopted from former Rule 10–202(c)(2)(D), the so-called "catch-all clause."

It appears broad enough to include any-one who in the slightest degree might have some interest or relationship that would color the independent and impar-tial attitude required by the Code.

2 *Collier on Bankruptcy*, 15th ed. ¶ 327.-03[3][f]. (footnotes omitted); *In re Phila-delphia Athletic Club, Inc.*, 20 B.R. 328, 334 (E.D.Pa.1982).

▇ Verrill & Dana, by holding a mort-gage on the debtors' unencumbered real estate to secure payment of their fees and disbursements, "hold an interest adverse to the estate."

Upon the filing of the case an estate was created. 11 U.S.C. § 541(a) and Verrill & Dana possessed a lien on property of the estate. A lien is defined by Section 101(31) as a "charge against or interest in property to secure payment of a debt or perform-ance of an obligation." This constitutes "an adverse interest."

To 'hold an interest adverse to the estate' means (i) to possess or assert any eco-nomic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant....

*In re Roberts, supra,* at 827.

Verrill and Dana is also not "disinterest-ed."

There is no question that the purpose of the incorporation of the disinterest re-quirement of 11 U.S.C. § 327 was to pre-vent even the appearance of a conflict

irrespective of the integrity of the person or firm under consideration. Certainly a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision con-cerning estate matters.

*In re Codesco, Inc.,* 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982), citing *In re Realty Assoc. Securities Corp.,* 56 F.Supp. 1007 (E.D.N.Y.1944).

It is not difficult to perceive the potential mischief created by an attorney represent-ing and advising the debtor in possession, during the administration of a Chapter 11 case, when that attorney holds a lien on the debtor's property. How does the attorney advise the debtor when the debtor must provide adequate protection for the use of cash collateral under Section 362(c)(2) or provide adequate protection for obtaining post filing credit under Section 364? The potential for conflicting loyalties are many, from preparation and filing of the petition through confirmation or conversion. The Code does not permit such potential con-flicts. It does, however, permit a retainer, subject to review by the court under Sec-tion 329, and for priority treatment of at-torney fees under Section 507(a)(1).

Verrill and Dana cite *In re Pacific Far East Lines, Inc.,* 644 F.2d 1290 (9th Cir. 1981), in support of their position. That decision affords them no comfort because it arose under the old Act which did not re-quire disinterestedness by attorneys for a Chapter XI debtor in possession. *6 Collier on Bankruptcy,* 14th ed. ¶ 7.07. Former Rule 215, which was in effect at the time, required only that an attorney hold no in-terest adverse to the estate. Furthermore, the court's decision was based upon Section 60.d. of the Act and former Rule 220.[3] No reference was made to Rule 215; so we are not certain that the court ever considered whether taking a security interest in the debtors' assets caused the law firm to hold "an interest adverse to the estate" which was proscribed by former Rule 215.

**3.** Section 60.d. is now incorporated in Section 329 of the Code. B.R. 220 has been replaced by

B.R. 2017.

*In re Hill,* 5 B.R. 541 (Bankr.C.D.Ca. 1980), a Code case cited by Verrill & Dana, is likewise of no help to them. That was a Chapter 7 case involving a mortgage (trust deed) taken by an attorney for the Chapter 7 debtor. Section 327 applies only to a trustee or debtor in possession. Furthermore, this court would be disinclined to follow *In re Hill.*

It is surprising that this is the first time in nearly eleven years that this court has been presented this issue. Having now researched and carefully considered the issue the court realizes that Verrill & Dana should not have been employed as attorneys for the debtors in possession with the court's approval without divesting itself of its interest in the debtors' property. In future cases employment under such circumstances will not be approved.

█ The Creditors' Committee also attacks Verrill & Dana's mortgage and pre-filing fees on the ground that the transfer (mortgage) constitutes a preferential transfer on account of an antecedent debt (the pre-filing fees). That attack must fail. It is true that transfers to attorneys on account of antecedent debts for prior legal services may be avoided as preferential the same as any other antecedent debt. *In re Pacific Far East Lines, Inc., supra,* at 1292. However, all of Verrill & Dana's pre-filing fees were incurred in contemplation of bankruptcy and are not antecedent debts. Such pre-filing fees are generally allowable under Sections 330 and 331 if reasonable and necessary. *In re Roberts, supra,* at 849.

█ The Creditors' Committee's argument that the incurring of fees by Verrill & Dana secured by the mortgage is an unlawful extension of credit under Section 364 is also without merit.

> An attorney who is authorized by the court to represent a debtor in a case under the Bankruptcy Code is not a creditor of the estate ... although an attorney who performs services is entitled to compensation from the estate, the legal services do not constitute new credit within the meaning of Code § 364....

*In re Roamer Linen Supply, Inc.,* 30 B.R. 932, 935 (Bankr.S.D.N.Y.1983).

The creditors' committee argues that Verrill & Dana's fee application should be denied completely or drastically reduced. Most of its arguments do not address the issue of whether an attorney is entitled to be compensated when he is found to hold an interest adverse to the estate or is not disinterested. Many courts have disallowed compensation in its entirety in such cases. *In re Chou-Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr.W.D.Ky.1983); *In re Roberts, supra.*

Section 328(c) of the Code deals with the issue. It provides:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 ... if, at any time during such ... employment ... such professional person is not a disinterested person, or ... holds an interest adverse to the interest of the estate....

Recent published decisions have recognized that subsection 328(c) is permissive. *In re Daig Corp.,* 12 B.C.D. 1158, 48 B.R. 121 (Bankr.Minn.1985); 2 *Collier on Bankruptcy,* 15th ed. ¶ 328.04[2].

█ In this case it would be grossly unfair to Verrill & Dana to completely deny their application for compensation and reimbursement of expenses. The note and mortgage were revealed to the court at the commencement of the case as required by Section 328(a) and Rule 2014. Further, the propriety of such lien has never been decided in this District to the court's knowledge, and the court has been unable to find a reported case since the enactment of the Code applying sections 327(a), 101(13) and 1107(a) to similar facts.

Most of the services rendered and disbursements made by Verrill & Dana in this case were reasonable, actual, necessary and allowable under Section 330 of the Code.

Any services and disbursements relating to the note and mortgage are not compensable and will not be allowed. The court has reviewed Verrill & Dana's itemized account which reveals that 26.5 hours were devoted, at least in part, to the note and mortgage. Where the court was unable to "break out" the time devoted to the note and mortgage the entire time reported will be disallowed.

An appropriate order will be entered.