**In re Larry T. and Cynthia J. MARTIN d/b/a A & W Drive-In Restaurant and Martin's Exxon.**

**Civ. No. 86–0170–P.**

United States District Court,
D. Maine.

July 15, 1986.

P. Benjamin Zuckerman, Robert J. Keach, David C. Hillman, Verrill & Dana, Portland, Me., Matthew L. Caras, for debtor.

William Black, Portland, Me., Trustee.

Stanley Greenberg, Portland, Me., for Creditor's Committee.

MEMORANDUM OF DECISION AND ORDER DENYING THE DEBTORS' APPEAL AND DENYING THE CREDITOR COMMITTEE'S CROSS–APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY COURT

GENE CARTER, District Judge.

This is an appeal from an Order of the United States Bankruptcy Court invalidating a mortgage deed given by the Debtor Larry T. Martin to the Debtors' counsel, Verrill & Dana, to secure attorney's fees incurred for representation of the Debtors in preparation for and during the pending bankruptcy proceeding.

## I. STANDARD OF REVIEW

While a District Court may not set aside a Bankruptcy Court's finding of fact unless that finding is clearly erroneous, conclusions of law are subject to *de novo* review. 28 U.S.C. § 158; Bankruptcy Rule 8013. *See In re Armorflite Precision, Inc.,* 48 B.R. 994, 998 (D.Me.1985). Bankruptcy Courts have broad discretion in determining the amount of attorney's fees to be awarded. *See In re Devers,* 33 B.R. 793, 796, Bankr.L.Rptr. (CCH) ¶ 69293 (D.D.C.1983); *In re McCombs,* 33 B.R. 387, 388 (E.D.Mo.1983), *aff'd,* 751 F.2d 286 (8th Cir.1984). *See also In re Paine,* 14 B.R. 272, 274 (W.D.Mich.1981); *In re Foster Iron Works, Inc.,* 3 B.R. 715, 717, 22 C.B.C. 839 (S.D.Tex.1980); *In re Aaron Ferer & Sons Co.,* 427 F.Supp. 350, 354 (D.Neb. 1977).

## II. FACTS

On November 27, 1984, Larry T. Martin and Cynthia J. Martin, the Debtors, contacted the law firm of Verrill & Dana because the Martins were suffering serious financial difficulties. After consultation with counsel, the Debtors decided to file a Chapter 11 petition. However, the Debtors were unable to obtain the $5,000 retainer required by their counsel. Consequently, they provided a $500 retainer and agreed to sign a promissory note in the amount of $100,000, payable to Verrill & Dana on demand. The note provided for payment of all debts and obligations existing prior to, or created simultaneously with, the note and all future advances. The note was secured by a second mortgage on the Debtors Summit Street real estate in Portland.[1] On December 11, 1984, Verrill & Dana, the Grantee, recorded the mortgage in the Registry of Deeds and filed on behalf of the Debtors a Chapter 11 petition.

Along with their petition, the Debtors filed an application for authority to employ Verrill & Dana as counsel. The application revealed the terms of employment, including the existence of the note and mortgage,

1. The Summit Street property was not the Debtors' residence.

both in the written application and the Rule 2016(b) Statement. In addition, the affidavit of P. Benjamin Zuckerman, Esq., of Verrill & Dana, filed on December 12, 1984, in support of the application, revealed the note and mortgage. On December 14, 1984, the Bankruptcy Court issued the following order:

## ORDER AUTHORIZING DEBTORS TO EMPLOY COUNSEL

Upon the Debtors' Application for Authority to Employ Counsel dated December 11, 1984, the Rule 2016(a) Statement of said counsel and the Affidavit of P. Benjamin Zuckerman dated December 12, 1984; no notice being necessary and good cause appearing to me therefor; it is hereby ORDERED that the Debtors be, and hereby are, authorized to employ P. Benjamin Zuckerman, David C. Hillman and Robert J. Keach, all attorneys at Verrill & Dana, as their counsel in this proceeding under general retainer of $500 at their usual hourly rates.

The Order did not address the issue of the mortgage securing the fees incurred.

Subsequently, the reorganization attempt failed and, in May 1985, the Debtors voluntarily converted this action from a Chapter 11 proceeding to a Chapter 7 proceeding under the Bankruptcy Code. Shortly thereafter the Bankruptcy Court appointed a Trustee. The Trustee filed an intention to abandon the Summit Street real estate, apparently considering Verrill & Dana's mortgage to be valid. The Creditors' Committee objected to the abandonment of the Summit Street property on the ground, *inter alia*, that the mortgage was invalid.

In the meantime, Verrill & Dana filed an application for interim compensation. The Creditors' Committee filed an objection to the fee application.

## III. THE DECISION BELOW

On March 21, 1986, 59 B.R. 140, the Bankruptcy Court issued an Order and a Memorandum Decision invalidating the mortgage deed, but allowing compensation in the amount of $9,882.60 and disbursements in the amount of $539.12. The Court determined that Verrill & Dana, by holding a mortgage on the Debtors' real estate, held an interest adverse to the estate of the Debtors, contrary to 11 U.S.C. § 327(a) which allows the employment of attorneys who are "disinterested persons." The Court noted the novelty of the issue and stated that after careful consideration, it had concluded that the Court should not have approved Debtors' counsel as attorneys for the Debtors in possession until counsel had divested themselves of their interest in the Debtors' real estate.

The Court rejected arguments by the Creditors' Committee that the mortgage constituted a preferential transfer on account of an antecedent debt, or that the incurring of fees secured by a mortgage is an unlawful extension of credit under 11 U.S.C. § 364. Despite the existence of an interest adverse to the Debtors, the Court determined that under these circumstances it would be "grossly unfair" to Verrill & Dana to completely deny their application for compensation and reimbursement of expenses. The Court allowed disbursements and fees for most of the services for which Verrill & Dana applied.

## IV. ISSUES RAISED ON APPEAL

The Debtors appealed the Bankruptcy Court's decision to invalidate the mortgage deed. The Creditors' Committee filed a Notice of Cross-Appeal in regard to so much of the Order as allowed compensation to Verrill & Dana and listed three issues to be presented on cross-appeal. However, the only issue discussed in the Committee's brief is whether the Bankruptcy Court erred by failing to invalidate the mortgage on the ground that it violated 11 U.S.C. § 364(c). Therefore, this Court treats the remaining issues as waived.

## V. DISCUSSION

### *Propriety of the Mortgage Deed*

██ The Bankruptcy Code authorizes a Bankruptcy Court to approve the employ-

ment of counsel for the debtor in possession. 11 U.S.C. §§ 327(a), 1107. *In re Cormier,* 35 B.R. 424, 425 (D.Me.1983). Counsel may not hold or represent an interest adverse to the estate and must be "disinterested." 11 U.S.C. § 327(a). *See In re Leisure Dynamics,* 32 B.R. 753, 754, 9 C.B.C.2d 265 (Bankr.D.Minn.1983). A disinterested person is defined in 11 U.S.C. § 101(13) as a person who

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) *does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.*

(Emphasis added.) The Code does not define a materially adverse interest. However, neither the existence of a prior legal

debt for services in contemplation of bankruptcy [2] nor the payment of a retainer for the purpose of securing legal fees, creates an adverse interest between the debtor and counsel. 11 U.S.C. §§ 328, 329. Section 328 provides that professional persons may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." Rule 2017(a) of the Rules of Bankruptcy Procedure, which implements Section 329(b), provides:

> ... the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to any attorney for services rendered or to be rendered is excessive.

In this case, the law firm received a mortgage on the Debtors' property in lieu of a retainer. The Debtors cite two recent cases in which a security interest was upheld and two cases in which a security interest was invalidated, both of the latter involving attorney misconduct which is not present here.

In *In re Pacific East Line, Inc.,* 644 F.2d 1290 (9th Cir.1981), the debtor's counsel obtained a security agreement to secure its $860,000 claim for fees, only $17,000 of which derived from legal services related to the bankruptcy. The Bankruptcy Court set aside the security interest under Bankruptcy Rule of Procedure 220, in effect at the time.[3] The District Court reversed and the Ninth Circuit affirmed, stating:

> [W]e conclude that there is no support in the statutory language, the legislative

---

**2.** *See In re Roberts,* 46 B.R. 815, 849 (Bankr.D. Utah, 1985); *see also In re Daig,* 48 B.R. 121, 132 n. 6, 12 B.C.D. 1158, Bankr.L.Rptr. (CCH) ¶ 70359, (D.Minn.1985).

**3.** Bankruptcy Rule of Procedure 220 stated:

Payment or Transfer to Attorney in Contemplation of Bankruptcy. On motion by any party in interest or on the court's own initiative, the court may examine any payment of money or any transfer of property by the bankrupt, made directly or indirectly and in contemplation of the filing of a petition by or

against him, to an attorney for services rendered or to be rendered.

*See also* Rule 219(c)(1) of the old rules, which stated: "The compensation allowable by the court to a[n] ... attorney ... entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors."

history, or the case law for the trustee's theory that the security interest in [counsel for the debtor] ... is voidable in its entirety under Rule 220, independent of the value of the legal services rendered by [debtor's counsel].

644 F.2d at 1293.

■ The Bankruptcy Court rejected the Debtors' reliance on *In re Pacific* in this case because that case was decided under the Bankruptcy Act, which did not require disinterestedness by attorneys for a Chapter XI debtor in possession.[4] 6 *Collier on Bankruptcy* 14th ed. § 7.07. The Debtors point out, however, that the subsection under which the Bankruptcy Court found Verrill & Dana to be not disinterested in the case in subsection (E) of Section 101(13), which refers to the holding of a materially adverse interest, the same standard which was included in Bankruptcy Rule 215, then in effect, and is now included in Section 327. However, it is not clear that the *In re Pacific* Court considered Rule 215 in its decision.[5]

The Debtors state that they have found only two cases in which a court has invalidated a security interest given to counsel, both of which involve attorney misconduct: *In re Whitman*, 51 B.R. 502 (Bankr.D. Mass.1985), and *In re Pierce*, 53 B.R. 825 (Bankr.D.Minn.1985). In neither case did the court invalidate the security interest in the debtor's property because that method of securing attorney's fees was itself im-

proper. Rather, the *Whitman* court indicated that in other cases a law firm's requirement of a security interest in the debtor's property as a condition of employment may be proper. 51 Bankr. at 507–08.[6]

This Court has found some authority in treatises for the Debtors' position. In discussing the relief which a court may grant when a fee request exceeds the reasonable value of an attorney's services, the *Collier Bankruptcy Manual* states:

[T]he relief granted on the motion for examination may be a money judgment for the amount which is found to be excessive and unreasonable or *if the consideration received by the attorney was in the form of a transfer of property or by way of a lien on the property of the debtor*, the judgment will be in the form of a decree declaring the transfer or the lien null and void.

2 *Collier Bankruptcy Manual* 329–10 (1986). *See also* 2 *Collier on Bankruptcy* 329–18 (1986). This discussion appears to contemplate that debtors may give liens to their attorneys consistent with the Code and that such liens are to be declared null and void only if the Court finds that the fee requested is excessive.[7]

In evaluating the Bankruptcy Court's finding that the holder of a lien on the Debtors' property has a materially adverse interest to that of the Debtors, it seems appropriate to examine whether an attorney who is a lien holder or secured creditor

---

4. In *In re Pacific East Line,* the collateral of the security interest was chattel paper, general intangibles, and contract rights, not real property. However, the Bankruptcy Court did not distinguish the case on this basis. In addition, the Court relied on a conflict presented by an attorney taking a security interest in cash collateral. Thus, the decision below encompasses security interests in the Debtor's property, not simply real property.

5. The Debtors also rely on *In re Hill,* 5 B.R. 541, 6 B.C.D. 917 (Bankr.C.D.Cal.1980), in which a court reduced the fees requested by counsel representing a Chapter 7 debtor, but did not invalidate a trust/deed on the debtor's home which secured a promissory note for the fees. However, an attorney for the Chapter 7 debtor is not subject to the restrictions of Section 327(a). *In re Roaring Creek Mining Co., Inc.,* 51

B.R. 866, 869, Bankr.L.Rptr. (CCH) ¶ 70693 (Bankr.E.D.Tenn.1985); *In re Roberts,* 46 B.R. 815, 822 (Bankr.D.Utah 1985). This Court notes that although the instant case has now been converted to a Chapter 7 proceeding, at the time the Debtors' attorneys sought Court approval of their representation of the Debtors, Section 327 was applicable.

6. These cases were not brought to the attention of the Bankruptcy Court.

7. Further, it has been suggested that the requirement of disinterestedness applies with less stringency to an attorney for the debtor in possession than to the attorney for the trustee. *In re Heatron,* 5 B.R. 703, 705, 6 B.C.D. 883, 2 C.B. C.2d 1054 (Bankr.W.D.Mo.1980), 2 *Collier on Bankruptcy,* 327–33 (1986).

has a conflict of interest with the debtor greater than that of an attorney who is an unsecured creditor or who receives a cash retainer, both of which are authorized by the Code. Specifically, the Bankruptcy Court found that an attorney who holds a security interest in cash collateral has a potential conflict when advising the debtor regarding the extent to which the debtor must provide adequate protection for the use of cash collateral under Section 362(c)(2). In that instance, the debtor and attorney possess conflicting interests, since the debtor seeks authorization to use the cash collateral, while the attorney, as a secured creditor, opposes the use or seeks greater protection of the collateral. When adequate protection for post-filing credit under Section 364 is at issue, it may be in the debtor's interest to grant to the new creditor a lien that is superior to existing liens on property of the estate. However, it would be in the attorney-lien creditor's interest to prevent the creation of a senior lien or to seek additional protection for his or her own lien. The Bankruptcy Court below found that these are but two of many potential conflicts which arise when an attorney is a secured creditor. These conflicts are not presented by other fee arrangements.[8]

There appears to be no prior case which holds that a lien on a debtor's property is a materially adverse interest to the debtor for purposes of the employment of counsel. However, this Court is satisfied, after examining the potential conflicts enumerated by the Bankruptcy Court, that such is the case, although the Court is troubled by the following arguments which might support the opposite result. First, a transfer of property in payment for legal services rendered during a bankruptcy proceeding is specifically contemplated by Rule 2017(a), which implements Section 329(b), and was also contemplated in Rule 220(b) of the old Rules of Bankruptcy Procedure. Second, Congress has amended the Code to allow an attorney to represent a debtor and creditors in the same proceeding, absent objection by another creditor and actual conflict of interest. 11 U.S.C.A. § 327(c) (West Supp.1986). Although the Court has not located a case where the amended subsection (c) of Section 327 has been applied to the representation of secured creditors, the statute does not limit its application to unsecured creditors. The requirement of actual conflict indicates Congress' assessment that representation of a debtor's interest is not *per se* adverse to representation of the secured creditor's interest.[9]

However, it is clear that potential conflicts *are* presented by the fee arrangement in this case. This Court believes it is appropriate in this instance to defer to the expertise of the Bankruptcy Court in determining the severity of those potential conflicts and to that Court's discretion in authorizing fee arrangements as well as in determining the amount of fee awards. The Court agrees, however, that under the circumstances, denial of all compensation would be inappropriate and would not further the purpose of Section 327.[10]

---

8. *See In re Heatron, Inc.,* 5 B.R. 703, 705 (Bankr. W.D.Mo.1980), in which the Court suggests that in a Chapter 11 proceeding the interest of an attorney who is an *unsecured* creditor because of prior representation of the debtor may be an interest which is in harmony with the debtor. *See also In re Yermakov,* 718 F.2d 1465, 1470 (9th Cir.1983) (nothing inherent in a contingency fee agreement between a debtor and his attorney prevents it from being enforceable in bankruptcy.)

9. In addition, a lien on the debtor's property as consideration for legal services appears to be recognized as appropriate under the Code in *Collier on Bankruptcy, see* 2 *Collier on Bankrupt-* cy 329–18 (1986), which is generally regarded as the major treatise in the field. The Court also notes that the Creditors Committee, which prevailed under the Bankruptcy Court's analysis, did not urge this rationale below and has abandoned it in this Court.

10. The Creditors' Committee argues that the lien is an unlawful extension of credit under Section 364. However, legal services do not constitute new credit within the meaning of Section 364, even though a debt is created subsequent to the petition which will be paid by the estate, *In re Roamer Linen Supply, Inc.,* 30 B.R. 932, 935, 10 B.C.D. 1314, 9 C.B.C.2d 218 (Bankr.S.D.N.Y. 1983), regardless of the form of the debt.

## V. ORDER

Therefore, it is ORDERED that:

(1) the Debtors' Appeal from the Order of the Bankruptcy Court invalidating the mortgage deed given to Verrill & Dana be, and it is hereby, DENIED;

(2) the Creditors' Committee's cross-appeal of the Bankruptcy Court's decision that the lien is not an unlawful extension of credit under Section 364 be, and it is hereby, DENIED; and

(3) The Order of the Bankruptcy Court appealed herein be, and it is hereby, AFFIRMED.